NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHYNELL PEARSALL** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JP MORGAN CHASE BANK** | : | NO. 21-3911 |

### MEMORANDUM

**Savage, J.**                                                                                                          **May 24, 2022**

Shynell Pearsall, proceeding *pro se*, brings this action against JP Morgan Chase Bank ("JP Morgan") alleging violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collections Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), and the Telephone Consumer Protection Act ("TCPA"). She also seeks leave to proceed *in forma pauperis*.

Because it appears that she is not capable of paying the fees to commence this action, we shall grant her leave to proceed *in forma pauperis.* For the following reasons, we shall dismiss her Complaint without prejudice and grant her leave to amend.

### FACTUAL ALLEGATIONS[1]

Pearsall's form Complaint is essentially blank. We discern her allegations from her attached exhibits.[2] Exhibit B contains a "Statement of Claim" in which Pearsall alleges that she is a "consumer" as defined in 15 U.S.C. § 168a(c) of the FCRA and that JP

---

[1] The allegations set forth in this Memorandum are taken from Pearsall's Complaint and the exhibits thereto. We adopt the pagination assigned to the Complaint by the Court's CM/ECF docketing system.

[2] *See* Complaint ("Compl.") (Doc. No. 2); *see also* Exhibits A & B (Doc. No. 2-1).

Morgan "is a self-proclaimed financial services company located in Delaware."[3]  She also lists a JP Morgan account number: "464018205789XXXX." [4]

Pearsall asserts a claim under the FCRA, alleging that (1) JP Morgan "falsely reported incorrect debt information to the national credit reporting agencies including but not limited to, the incorrect debt amount, account status, and status update"; and (2) the "amount of $8909 reported to national consumer reporting agencies by Defendant is incorrect."[5]  Exhibit A, which appears to be a page from Pearsall's credit report generated by Experian on August 17, 2021, contains information regarding her JP Morgan account.[6] In particular, the Experian Report reflects that account number 464018XXXXXX was opened on August 2, 2010 with a credit limit of $7,800 and a past due amount of $8,627. The report also shows that the status of the account was updated in January of 2020, the past due amount charged off, and the account closed.[7]

Asserting a claim under the FDCPA, Pearsall alleges JP Morgan's debt collection efforts violated § 1692e of the FDCPA, which prohibits debt collectors from using false, deceptive or misleading representations or means in connection with the collection of a debt.[8]  She alleges that JP Morgan violated § 1692e because "the credit report falsely represents the true amount of the debt in violation of § 1692e(2)(A)" and because JP Morgan made "false and deceptive representation[s] . . . ."[9]  Pearsall also alleges that

---

[3] Statement of Claim (Doc. No. 2-1 Ex. B at 9–10) ("SOC").

[4] *Id*. at 9.

[5] *Id.*

[6] *See* Experian Credit Report (Doc. No. 2-1 at 2) ("Experian Report").

[7] *Id*.

[8] SOC at 9.

[9] *Id*.

beginning in 2020 she began receiving calls from JP Morgan in an effort to collect the debt, and that during the calls JP Morgan did not inform her that making a payment toward the debt "would reage the debt which would make the contract invalid."[10]  She claims that she was unfairly misled by JP Morgan, and that billing and collections complaints have been lodged against them.[11]  She refers to Exhibit B, which includes what appears to be a printout of a Better Business Bureau Business Profile of JP Morgan Chase & Co. showing that there were 3,616 customer complaints made against them.[12]

Pearsall also asserts a claim under § 227 of the TCPA.  She alleges that starting in 2020, she began receiving calls from JP Morgan in an effort to collect the debt, that she "received over 200 calls," and that "[d]efendants' excessive calls affected [her] ability to use their phone, work and cause[d] emotional and physical distress".[13]  Although she refers to an "Exhibit C," there is no Exhibit C.

Pearsall also asserts a claim under the TILA.  She claims that JP Morgan misled her about its lending practices and that she was "not informed on full lending disclosures."[14]

Pearsall claims that as a result of JP Morgan's conduct, she suffered "loss of credit, loss of ability to purchase and benefit from the credit, increased interest rate, loss of loans,

---

[10] *Id*. at 9-10.

[11] *Id*. 9-10.

[12] Better Business Bureau Business Profile (Doc. No. 2-1 at 4-8).

[13] SOC at 10.

[14] *Id*.

humiliation, and embarrassment."[15]  She also asserts that she was "denied credit cards, and credit increases."[16]

She seeks recovery of compensatory, statutory, and punitive damages.[17]

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we must dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "[M]ere conclusory statements do not suffice." *Id.* Because Pearsall is proceeding *pro se*, we construe her allegations liberally.  *Higgs v. Att'y Gen*., 655 F.3d 333, 339 (3d Cir. 2011).

## DISCUSSION

*FCRA Claim*

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  Furnishers[18] of credit information to consumer reporting agencies cannot be sued by a consumer for reporting inaccurate information.  They can

---

[15] *Id.*

[16] *Id.*

[17] Compl. at 5.

[18] In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

4

only be sued for failing to conduct a reasonable investigation of a dispute regarding the accuracy of information furnished to and reported by a consumer reporting agency.

Creditors have a duty to provide accurate information to consumer reporting agencies. 15 U.S.C. § 1681s-2(a); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (citation omitted). A creditor may not furnish information that it knows or has reason to know is inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A). Enforcement of this provision lies exclusively with certain federal and state officials. *Id.* § 1681s-2(d). A consumer cannot bring a private action against a creditor for furnishing inaccurate information under § 1681s-2(a).

Furnishers may be liable to a consumer for failing to conduct a reasonable investigation of the consumer's bona fide dispute regarding the accuracy of the information furnished. *Id.* §§ 1681i(a)(2), 1681s-2(b); *see also SimmsParris*, 652 F.3d at 358–59. Section 1681s-2(b) prescribes a furnisher's duty to investigate the accuracy of information supplied to a consumer reporting agency once it is disputed. If a furnisher fails to conduct a reasonable investigation in conformity with § 1681s-2(b), the consumer may sue the furnisher for damages caused by the reporting of inaccurate or incomplete information. *Seamans*, 744 F.3d at 864; 15 U.S.C. §§ 1681n, 1681o.

Here, Pearsall alleges that JP Morgan "falsely reported incorrect debt information to the national credit reporting agencies, including but not limited to, the incorrect debt amount, account status, and status update,"[19] and that the $8,909 balance reported to the national reporting agencies is incorrect.[20] However, she does not allege that she filed

---

[19] SOC at 9.

[20] *Id.*

5

a notice of dispute with the credit reporting agency, that the agency notified JP Morgan of the dispute, or that JP Morgan failed to investigate and modify the inaccurate information.  Thus, she has not stated a plausible claim under the FCRA.

### FDCPA Claim

The FDCPA "provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005).  To state an FDCPA claim, a plaintiff must establish that: she is a consumer harmed by an FDCPA violation; that the debt at issue arose from a "transaction entered into primarily for personal, family, or household purposes"; that the defendant is a debt collector; and that the defendant violated a provision of the FDCPA.  *Pressley*, 415 F. Supp. 3d at 512–13 (quoting *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 597 (E.D. Pa. 2014)); 15 U.S.C. §§ 1692a–1692o.

Pearsall alleges that JP Morgan violated the FDCPA in connection with a credit card, account number 464018XXXXXX, with a limit of $7,800 and a past due amount of $8,627 that was last updated on January 1, 2020.[21]  Though Pearsall has identified the nature of the debt at issue, the current amount of the debt, and whether the debt is in arrears, she has not identified any dates or times that JP Morgan contacted her regarding the debt, or the contents of those communications.  Thus, Pearsall has not stated a plausible claim.

Additionally, if JP Morgan's involvement in this case was in its capacity as a creditor, Pearsall cannot sue it under the FDCPA.  The FDCPA "applies only to 'debt collectors . . . .'"  *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018).  Debt

---

[21] Experian Report at 2.

collectors are "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This term focuses "on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).

In contrast, creditors—defined as "any person who offers or extends credit creating a debt or to whom a debt is owed. . ."—are generally not subject to the FDCPA. 15 U.S.C. §1692a(4); *see Tepper*, 898 F.3d at 366. It appears from Pearsall's complaint that JP Morgan is a creditor, not a debt collector. Thus, Pearsall's FDCPA claim shall be dismissed.

*TCPA Claim*

The TCPA "governs automated calling, and limits autodialed and prerecorded voice calls and texts. It also authorizes a private cause of action to people who receive calls that violate the Act, including statutory damages of $500 for each violation." *Perrong v. Victory Phones, LLC*, 519 F. Supp. 3d 193, 195 (E.D. Pa. 2021) (citing 47 U.S.C. § 227(b)(3)). In order to state a claim under § 227(b) of the TCPA, a plaintiff must allege that "'(1) the defendant called a cellular telephone number; (2) using an [automated telephone dialing system ("ATDS")]; (3) without the recipient's prior express consent.'" *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 WL 2144671, at *4 (E.D. Pa. May 26, 2021) (quoting *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5642653, at *3 (E.D. Pa. Sept. 21, 2020)). In order to state a claim under § 227(c) of the TCPA, plaintiffs must allege that "(1) they receive[d] multiple calls within twelve months,

(2) by or on behalf of the same entity, (3) on a residential phone registered on the [Do Not Call] List.'" *Camunas*, 2021 WL 2144671, at *6 (alterations in original) (citation omitted).

Pearsall does not identify which section of the TCPA she alleges JP Morgan violated. Nonetheless, under either section, her allegations do not state a plausible claim. Pearsall only alleges that beginning in 2020, she started receiving calls on her phone from JP Morgan to collect an alleged debt. She alleges that she received over 200 calls and that the calls affected her ability to use the phone to work and caused emotional and physical distress.[22]

These allegations do not state a claim under § 227(b) because Pearsall does not allege that the calls were directed to a cell phone, that an ATDS was used, and that she did not consent to receive the calls. They do not state a claim under § 227(c) because she does not allege that the calls were directed to a residential phone on the Do Not Call List. Thus, Pearsall's TCPA claim must be dismissed.

*TILA Claim*

The Truth in Lending Act aims to ensure meaningful disclosure of credit terms and to protect consumers from inaccurate and unfair credit billing practices. 15 U.S.C. § 1601(a); *see Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 53–54 (2004). The TILA "requires lenders to make certain disclosures to borrowers and gives borrowers a civil cause of action against creditors who violate these disclosures." *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 500 (3d Cir. 1998).

---

[22] SOC at 9–10.

Pearsall alleges in conclusory fashion that JP Morgan misled her about its lending practices and that she was "not informed on full lending disclosures."[23] She does not identify the subsection of the TILA which gives rise to her claim nor does she allege facts to support her claim. Thus, we shall dismiss Pearsall's TILA claim.

## CONCLUSION

For the reasons stated, Pearsall's application for leave to proceed *in forma pauperis* will be granted and her Complaint will be dismissed without prejudice for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). She is granted leave to amend her Complaint.

---

[23] SOC at 10.